April 7, 2011

The Honorable David Folsom
Chief United States District Judge
Eastern District of Texas
Federal Courthouse Building
500 North State Line Avenue, Third Floor
Texarkana, Texas 75504

*CLERK, U.S. DISTRICT COURT*
*RECEIVED*
*APR 1 9 2011*
*EASTERN DIST. OF TEXAS*

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

APR 1 9 2011

DAVID J. MALAND, CLERK
BY
DEPUTY_____

Re:   USA v. Clovis Prince
      Case No: 4:09-CR-161 and 4:10-CR-047

Dear Judge Folsom:

In The Matter Of:

CIVIL NUMBER:  5:11 CV   - 89  _____

CLOVIS PRINCE,
v.
KIRK FREDRIC LECHTENBERGER
Attorney at Law
2525 McKinnon, Suite 420
Dallas, Texas 75201

and

RICHARD J. DEAGUERO, SR.
Attorney at Law
5001 Spring Valley Road
Suite 400 East
Dallas, Texas 75244

and

JAMES E. POLK, II
Attorney at Law
2201 Main Street
Suite 1018, Lock Box 107
Dallas, Texas 75201

1

IN THE MATTER OF:

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) | 4:09-CR-161 and 4-10-CR-047 |
| CLOVIS PRINCE | ) | |

The United States Government is <u>not</u> a part of this fee dispute, arising from "intimately intertwined with the comportment of the [criminal] case," alleged legal representations of the three named attorneys.

## JURISDICTION

Mr. Prince hereby request of the Honorable United States District Court Judge, David Folsom, to review and invoke jurisdiction under 28 U.S.C. Section 1331, 1332 and 1367.

## FACTUAL BACKGROUND

The United States Government commenced a criminal investigation of Mr. Prince in April, 2008, which subsequently resulted in the filing of criminal indictments on September 10, 2009 (4:09-CR-161) and March 10, 2010 (4:10-CR-047). Both cases are assigned to the Honorable United States District Court Judge Folsom.

Mr. Prince, in conjunction to the aforementioned criminal cases hired the services of Attorneys Lechtenberger, Deaguero and Polk. From the hiring of these three attorneys in relation and intertwined with the criminal cases, the fee disputes has arisen and is now before the court to resolve.

## KIRK FREDRIC LECHTENBERGER

Mr. Lechtenberger was retained by the defendant to represent him in the criminal Case Number 4:09-CR-161.  Mr. Lechtenberger entered into two contracts with Mr. Prince, for representation in the criminal case in chief, and the criminal/civil trial related forfeiture of assets as alleged in the indictment.  Mr. Prince paid Mr. Lechtenberger the initial requested fee for the criminal case in chief, with the balance due upon the jury trial.  Mr. Prince terminated the services of Mr. Lechtenberger with cause prior to the criminal case in chief jury trial.

On or about September 8, 2009, by way of electronic and telephone communications, Mr. Lechtenberger advised Mr. Prince fraudulently that a forfeiture trial will be conducted pursuant to any criminal complaint, and/or a subsequent conviction. Mr. Lechtenberger requested of Mr. Prince to pay him $20,000 for the forfeiture of assets that the government would be attempting to seize; and, would be subject to forfeiture.  Mr. Prince was in Oklahoma at the time and had to obtain the funds to pay Mr. Lechtenberger from a family member.  The funds were drawn on an Oklahoma bank, the payment was written in Oklahoma, and delivered by Mr. Prince to Mr. Lechtenberger in Dallas, Texas.

Subsequent, an indictment was issued on September 10, 2009, naming only four alleged piece of assets the government would attempt to seize upon a guilty verdict.

As the Honorable Judge is fully aware, Mr. Lechtenberger did not represent Mr. Prince in connection with the criminal/civil forfeiture trial of the four named properties in

3

the indictment. In fact, there has never been a separate trial to argue the four named properties in the indictment that Mr. Lechtenberger was involved in.

It became aware to Mr. Prince, that Mr. Lechtenberger committed malpractice, fraudulent misrepresentation, breach of fiduciary duty, violations of Mr. Prince's Sixth Amendment, breach of contract, wire and mail fraud; when he contacted Mr. Prince via cell phone in Oklahoma and advised him that criminal/civil forfeiture trial actions would be a separate trial from the criminal case, and he would need an additional $20,000 to commence legal representation. In is without a doubt, that immediately after the jury verdict, the jury decided the effects of the forfeiture of the indictment.

Therefore, through fraud and legal malpractice, Mr. Lechtenberger obtained $20,000 on September 8, 2009 for the forfeiture trial proceedings, that he ultimately never became a part of. Because, the laws in place clearly states, that the criminal forfeiture action will be decided by the jury or judge immediately after a guilty verdict. The law does not state that a defendant will be subject to another trial as Mr. Lechtenberger fraudulently represented to Mr. Prince and his family.

On March 29, 2011, by way of certified mail return receipt requested, Mr. Prince sent a demand letter attached hereto as <u>Exhibit 1</u>, to Mr. Lechtenberger requesting the return of the $20,000 (which is not a part of the criminal case in chief fees that Mr. Prince paid to Mr. Lechtenberger) fee for the forfeiture trial matter, that he never was a part of. As of the date of this filing, Mr. Lechtenberger has not returned the fraudulently

4

induced $20,000 fee.

Mr. Prince clearly advised Mr. Lechtenberger that the $20,000 is needed to obtain new counsel for sentencing and appeal.  (emphasis supplied)

Wherefore, Mr. Lechtenberger has used the officer capacity of the court to fraudulently through wire and telephone communications across state lines, to take $20,000 from Mr. Prince and his family for a forfeiture action trial that he has never been a part of, and the law at the time did not call for a separate trial after a jury verdict.  Mr. Prince request of the Court to enter an Order that Mr. Lechtenberger pursuant to the facts and circumstances hereto related to the criminal case in chief shall return to Mr. Prince the $20,000 for the alleged criminal/civil forfeiture trial, that never occurred.  Mr. Prince is also requesting that the Court assess Mr. Lechtenberger interest to Mr. Prince from September 8, 2009 to the date the Court entered the decision and payment is made.  Mr. Prince also request that the Court discipline Mr. Lechtenberger in a manner pursuant to the Court authority and power as vested.

The return of the funds will be used to obtain new counsel of his choice for Mr. Prince at sentencing and on appeal.

This fraudulent representation was made in the criminal case of <u>United States v. Clovis Prince</u>, 4:09-CR-161, before Judge Folsom.

## RICHARD J. DEAGUERO, SR.

On or about November 9, 2010, Mr. Richard J. Deaguero, Sr., represented to Mr.

Prince's family and friends that he would file and obtain a continuance of the pending trial of November 15, 2009 in Case No's 4:09-CR-161 and 4:10-CR-047.  Mr. Deaguero represented that he would obtain a continuance based upon a request for a mental examination of Mr. Prince.  It is noted that Mr. Deaguero did in fact file the request for continuance based upon a mental evaluation.  See, 4:10-CR-047, Dkt 47; 4:09-CR-161, Dkt 119.  Mr. Deaguero assured the family and friends of Mr. Prince that he would obtain a continuance of the trial, and would need to obtain the assistance of an investigator and paralegal.  Mr. Deaguero communicated by way of cell phone to family and friends in Texas and Oklahoma, and advised that he would need $30,000 to obtain the continuance and prepare for trial.  He assured the family and friends that he had extensive experience in criminal cases before the United States District Court, and would be able to obtain the continuance.  It is noted that $1,500 was paid to Mr. Deaguero to review the case and make his legal recommendation as to what he could obtain.  Therefore, the friends and family (located in Oklahoma, Texas and Florida) took there savings and paid Mr. Deaguero the $30,000 fee.  Mr. Deaguero was paid a total of $31,150 in legal fees.

On November 9, 2010 a wire transfer from the friends and family account in Oklahoma City, Oklahoma was sent to Mr. Deaguero's bank account in Dallas, Texas. The wire transfer number was 109000000005310, from Arvest Bank, Oklahoma City, Oklahoma in the amount of $30,000 (Exhibit 2) to the Compass Bank, Dallas, Texas, to

Richard Deaguero's bank account number 14028409, bank routing number 111907445.

(Exhibit 3)  The funds were released upon Mr. Deaguero's legal representation that he would obtain a continuance of the trial and the fees would be used for hiring an investigator and paralegal to assist with trial preparation.  Mr. Deaguero committed malpractice when he advised the friends and family, that his many years of experience in criminal trials, he was absolutely sure of the continuance in the trial on both cases.

It is noted that Mr. Prince after researching Mr. Deaguero, advised the friends and family that he did not want him to represent him at trial (Mr. Deaguero had not handled a criminal trial in many years, and never handled a criminal trial in Sherman as he represented).  The friends and family attempted to obtain the $30,000 back from Mr. Deaguero, to allow the hiring of Ravkind & Associates, LLC, Dallas, TX.  Mr. Deaguero again committed legal malpractice on November 10, 2010, when he advised the friends and family that the court had granted his appearance in the case, and he would get the continuance. (emphasis supplied)  It is without doubt that Mr. Deaguero committed fraudulent legal malpractice, because the Court did not grant him permission to enter the cases until November 15, 2010 (4:09-CR-161, Dkt 128; 4:10-CR-047, Dkt 48) These fraudulent malpractice communications was made across state lines from Dallas, Texas to Oklahoma City, Oklahoma, by cell phone.  Further, Mr. Deaguero through this legal malpractice fraudulent actions, caused $30,000 to be sent via wire transfer from Oklahoma City, Oklahoma to Dallas, Texas.

On March 29, 2011, a demand letter was sent via certified mail return receipt requested to Mr. Deaguero hereto as <u>Exhibit 4</u>. As of the date of the filing of this matter before the Court, Mr. Deaguero has failed to return the fraudulently induced $30,000.

Mr. Deaguero reported to Mr. Prince and his friends and family, that he was allowed permission to enter the cases on November 10, 2010.  However, the Court is fully aware that after Mr. Deaguero's guaranteed continuance based upon a mental evaluation, that he was allow to represent Mr. Prince on one case <u>only</u>, the 4:10-CR-047, and Mr. Prince self-represented himself on 4:09-CR-161.  Also, it is well known that Mr. Deaguero fraudulently did not have a paralegal or investigator assigned to the case. Further, Mr. Deaguero had no knowledge of either case, to render effective assistance of counsel, as he was placed on the cases the day trial commenced.

The demand letter to Mr. Deaguero thoroughly advised him, that the fraudulently induced through legal malpractice, breach of contract, fraudulent misrepresentation, breach of fiduciary duty, violation of the Sixth Amendment -  $30,000 is to be used to obtain counsel for Mr. Prince for sentencing and appeal. (emphasis supplied)

Wherefore, through his position of an attorney, Mr. Deaguero committed legal malpractice and constitutional violations in guaranteeing a continuance based upon a mental evaluation (did not happen), the hiring of a paralegal and investigator (did not happen), advising that on November 10, 2010 he was admitted to enter the cases by the trial judge (which was false), and caused by these legal malpractice fraudulent acts

8

through cell phone communications in Texas and Oklahoma, caused a wire transfer of $30,000 to be sent from Oklahoma City, Oklahoma to Dallas, Texas.

Mr. Deaguero "totally" misrepresented fraudulently what had occurred at the court, as well as what would occur; and the fact that he had extensive experience with criminal cases in Sherman, Texas.

For the above states factual reasons, Mr. Prince is requesting that the Court enter an Order directing Mr. Deaguero to forward back the $30,000 plus interest from November 9, 2010 to the time the Court enters a decision and payment is made. Mr. Prince request of the Court to discipline Mr. Deaguero in a manner the Court deem just and equitable.

This fraudulent representation was made in the criminal cases of <u>United States v. Clovis Prince</u>, 4:09-CR-161 and 4:10-CR-047, before Judge Folsom.

## JAMES E. POLK, II

On or about December 9, 2010, Mr. James E. Polk, II advised friends and family, that he had extensive experience in criminal sentencing and appeals, with specifics to the United States District Court, Eastern District of Texas and the Fifth Circuit, United States Court of Appeals.  Mr. Polk further met with Mr. Prince at FCI, Fort Worth, and advised him that he had extensive experience in criminal sentencing and appeals.  Mr. Prince conducted a LexisNexis and attorney search on Mr. Polk within the United States District Court, Eastern District of Texas and the Fifth Circuit, United States Court of

Appeals, and advised Mr. Polk that his representation to his family, friends and himself, was fraudulent.  Mr. Polk had no extensive experience in criminal sentencing and appeals at either court.  Therefore, Mr. Prince terminated his services for fraud, breach of contract, fraudulent misrepresentation, breach of fiduciary duty, violation of the Sixth Amendment and legal malpractice.

On December 9, 2010 by way of the cell phone, email and mail, Mr. Polk committed wire and mail fraud to induce Mr. Prince's friends and family to pay him $2,500 for his initial appearance.  On December 10, 2010, Mr. Polk caused through fraudulent means friends and family of Mr. Prince to release a cashier check number 2704322, drawn on Arvest Bank, Oklahoma City, Oklahoma in the amount of $5,000 for sentencing and appeal on the behalf of Mr. Prince in the criminal cases of 4:09-CR-161 and 4:10-CR-047.  The cashier check was then traveled across state lines and delivered to Mr. Polk. See, Exhibit 5 as to payments to Mr. Polk.

On or about January 26, 2011, Mr. Don Bailey in such agreement with Mr. Prince's decision to terminate Mr. Polk's representation because of fraud and legal malpractice, wrote to Mr. Prince that "I was concerned because it did not appear Mr. Polk had the experience or desire to do what it will take to represent you at sentencing and on appeal."  (Exhibit 6) (emphasis supplied)

Mr. Polk's involvement in the cases was from December 22, 2010 (4:10-CR-047, Dkt 112) and December 23, 2010 (4:09-CR-161, Dkt 197) to on or about January 12,

2011 when Mr. Prince advised Mr. Polk that his fraud malpractice representation was terminated. Mr. Prince demanded the return of the $7,500 that he fraudulently induced from his friends and family, stating he had extensive experience in criminal sentencing and appeals before the Eastern District of Texas and Fifth Circuit, United States Court of Appeals. Mr. Prince uncovered his fraud in less than two weeks.

On March 29, 2011 the second demand letter was sent to Mr. Polk, this time via certified mail return receipt requested. (Exhibit 7) Mr. Prince clearly advised Mr. Polk that the funds would be used to retain experience criminal attorneys to assist him in the two criminal cases pending before Judge Folsom for sentencing and appeal. (emphasis supplied). It is noted that after the first demand letter was sent and termination of Mr. Polk, he created a fictitious bill showing false billing entries.

Because the fraud and false misrepresentation caused funds to be sent from an Oklahoma City, Oklahoma bank and crossed state lines, through cell phone, wire, mail, and email correspondence; this is a multi-state case stemming from the criminal cases now before this court in 4:09-CR-161 and 4:10-CR-047.

It is without a doubt that Mr. Polk did not render any sentencing and/or appeal work in this case. It is without a doubt that Mr. Polk does not have extensive experience in criminal cases before the Eastern District of Texas and Fifth Circuit, United States Court of Appeals. It is without a doubt that these representations through fraud by way of mail, email, cell phone, and wire caused the fraud to be executed through legal

11

malpractice. It is without a doubt that after speaking with Mr. Polk, that Mr. Bailey also

believes his representation was not in accordance to what an attorney needed for the

criminal cases.

Wherefore, based upon the fraudulent and legal malpractice acts of Mr. Polk, and

the fact he has rendered no legal assistance toward the sentencing and appeal; the

request of the Court to Order that Mr. Polk shall repay the $7,500 fraudulently induced

fee plus interest from December 9, 2010 until the repayment is made. Mr. Prince

request of the Court to discipline Mr. Polk for his action as the Court deem just and

equitable.

In Conclusions, to the background and history, the crucial element is Mr. Prince

needs the $57,500 immediately that friends and family have paid to these three

attorneys through false and fraudulent acts, to retain the services of Ravkind &

Associates, LLC to assist him at sentencing and on appeal. It is well settled law that Mr.

Prince has the right to effective assistance of counsel at sentencing and on appeal of

his choice, if he can afford to retain the counsels. Evitts v Lucey, 469 U.S. 387, 397,

105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); Clark v Johnson, 227 F. 3d 273, 283 (5th Cir.

2000); United States v. Dovalina, 262 F. 3d 472, 474 (5th Cir. 2001); United States v.

Williams, 183 F.3d 458 (5th Cir. 1999).

## ARGUMENT AND AUTHORITY

The Honorable Judge David Folsom retains ancillary jurisdiction over a fee

dispute arising out of a criminal case. <u>Garcia v. Teitler</u>, 2003, U.S. Lexis 13854, (E.D.N.Y. 2004), affirmed by <u>Garcia v. Teitler</u>, 443 F. 3d 202, 2006 U.S. App. Lexis 8181 (2nd Cir. 2006); <u>United States v. Weismann</u>, 1997 U.S. Dist LEXIS 8540, No. S2 94-CR-760 (CSH), 1997 WL 334966, at *4-5 (S.D.N.Y Jun.16, 1997) (exercise ancillary jurisdiction over dispute between criminal defendant and employer concerning the payment of legal fees under indemnification agreement, after verdict but before sentencing.) (emphasis supplied)

It is noted that Magistrate Mazzant in an oral order on March 31, 2010 denied the application of <u>Teitler</u> in the Eastern District of Texas, before the petition hereto was filed. (<u>See</u>, March 31, 2010 status conference hearing) The Magistrate stated that the Eastern District does not get involved in fee matters between attorneys and client, and follows the precedence authority of the Fifth Circuit only, and does not follows cases decided in the Second Circuit.  Both, Mr. Prince and current stand-by counsel Mr. Don Bailey objected to this finding, and the Magistrate Judge stated to file the petition to the District Court Judge.  This petition is now ready for an evidentiary hearing and factual findings by the United States District Court Judge David Folsom, whom has presided over the criminal case that is the cause of this action.

Mr. Prince herein appearing in pro se, request of the Court to liberally construe these pleading, and hold him to less stringent standards of those prepared by an attorney.  <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed 2d 652 (1972).

Further, following in the manner of Garcia v. Teitler, id, a "letter" was written to the trial court judge requesting his intervention to resolve a fee dispute between the defendants and Teitler. Mr. Prince hereto pursuant to this authority and Haines v. Kerner, id., file with The Honorable Chief United States District Court Judge David Folsom his letter complaint. Mr. Prince as stated above, have tried to resolve this issue with the three attorneys directly, to no avail. Teitler, id.

Mr. Prince request an "EMERGENCY" evidentiary hearing, to allow the facts and evidence to be presented; to allow Mr. Prince to retain the services of Ravkind & Associates, LLC of Dallas, Texas to assist him at sentencing and on appeal.

This Court retains ancillary jurisdiction over a fee dispute arising out of a criminal case. Garcia v. Teitler, 2004 U.S. Lexis 13854 (citing Fermin v. Moriarty, 2003, U.S. Dist LEXIS 13367 (other omitted); United States v. Weissman, 1997 U.S. Dist. LEXIS 8540 (other omitted) (exercising ancillary jurisdiction over dispute between criminal defendant and employer concerning the payment of legal fees under indemnification agreement, after verdict but before sentencing)(…"which is applicable here after verdict and before sentencing.") Garcia v. Teitler, 443 F 3d 202, 207 (2nd Cir. 2006)

[Courts] holding is buttressed by the fact that courts have long exercise ancillary jurisdiction in criminal matters. In United States v. Schnitzer, 567 F. 2d 536, 538 (2nd Cir. 1977); Rufu v. United States, 20 F. 3d 63, 65 (2nd Cir. 1994); Soviero v. United States, 967 F.2d 791, 792 (2nd Cir. 1992); United States v. Sumner, 226 F. 3d 1005,

1014 (9th Cir. 2000); <u>Morrow v. District of Columbia</u>, 135 U.S. App. D.C. 160, 417 F. 2d

728, 740 (D.C. Cir. 1969) and other cases cited in <u>Garcia v. Teitler,</u> at 207-208.

    Given that courts had recognized their power to exercise ancillary jurisdiction in

criminal matters prior to the passage of the 1990 Act further informs the courts

decisions not to read sec. 1367 as a limit on a court's power to exercise ancillary

jurisdiction in criminal matters.  <u>Garcia v. Teitler,</u> 443 F. 3d at 207 (citing Rufu, 20 F. 3d

at 65; Soviero, 967 F. 2d at 792; Mora, 955 F.2d at 158.)

    It is prima facie that claims that arose out of the criminal and civil proceedings

before the Court has long been remedies by ancillary jurisdiction.  See, <u>Vance v.</u>

<u>Gallagher,</u> 280 Fed. Appx. 533 (7th Cir. 2007) (citing <u>Baer v. First Options of Chicago,</u>

<u>Inc.,</u> 72 F.3d 1294, 1299-1301 (7th Cir. 1995); <u>Clarion Corp. v. Am. Home Prods. Corp.,</u>

464 F.2d 444, 445 (7th Cir. 1972); <u>Abbott Lab v. CVS Pharmacy, Inc.,</u> 290 F.3d 854, 858

(7th Cir. 2002).

    At the heart of the issue before the Court, ancillary jurisdiction is aimed at

enabling the Court to administer "justice within the scope of its jurisdiction." <u>Teitler v.</u>

<u>Garcia</u>, 443 F. 3d at 208 (citing <u>Morrow</u>, 417 F.2d at 737 (internal quotation marks

omitted); see also <u>Jenkins v. Weinshienk</u>, 670 F.2d 915, 918 (10th Cir. 1982) ("Ancillary

jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or

controversy in its entirety.  Incident to the disposition of the principal issues before it, a

court may decide collateral matters necessary to render complete justice.")  Without the

power to deal with issues ancillary or incidental to the main action, courts would be

unable to "effectively dispose of the principal case nor do complete justice in the

premises." Garcia v. Teitler, supra (citing Morrow, 417 F. 2d at 738 n.36 (internal

quotation marks and citation omitted); id at 740 ("The major purpose of ancillary

jurisdiction...is to insure that a judgment of a court is given full effect; ancillary orders

will issue when a party's actions, either directly or indirectly, threaten to compromise the

effect of the court's judgment.") Id.   Along these lines, the Supreme Court has

instructed that ancillary jurisdiction may be exercised "for two separate, though

sometimes related, purposes:  (1) to permit disposition of claims that are, in varying

respects and degrees, factually interdependent by a single court (emphasis supplied),

and (2) to enable a court to function successfully, that is, to manage its proceedings,

vindicate its authority, and effectuate its decrees." Garcia v. Teitler. supra (citing

Kokkonen, 511 U.S. at 379-80 (internal citations omitted).

It has long been a standing that the outer limits of ancillary jurisdiction may be,

we hold that resolving a fee dispute after an attorney is terminated or withdraws...."is

within a district court's ancillary power, as it relates to the courts ability to "function

successfully." Garcia v. Teitler, supra.

Mr. Prince request of the Court to consider the four factors in deciding to exercise

ancillary jurisdiction over this particular fee dispute:  (1) familiarity with the subject

matter of the criminal case and the work performed by the Attorneys in that case as in

the results of the fee dispute; (2) responsibility to protect officers of the court and their clients in such matters; (3) the convenience to the parties of litigating in federal court as opposed to state court; (4) considerations of judicial economy. Teitler, id. (citing See Cluett, Peabody & Co., v. CPC Acquisition Co., 863 F. 2d 251, 256, (2nd Cir. 1998). In addition, "courts have emphasized that, before exercising ancillary jurisdiction, 'most important, [*14] [a court] must determine whether the exercise of jurisdiction is necessary to provide a fair resolution of the underlying matter, and to allow the court to administer its proceeding.'" Teitler, id, (citing Fermin, 2003 U.S. Dist, LEXIS 13367 (others omitted) (quoting Weissman, 1997 U.S. Dist LEXIS 8540 (other omitted))

Judge Folsom's familiarity with the criminal case places him in a better position to resolve this fee disputes than a state court judge with no connection to those proceeding. Mr. Prince has requested an Emergency Evidentiary Hearing, because he is mindful, as well as the Court for a swift resolution of this matter in light of the fact that Mr. Prince may need any funds wrongfully withheld by the attorneys to pay for his new attorneys of choice for sentencing and appeal. See, Teitler, id (citing Weissman, 1997 U.S. Dist LEXIS 8540) (other omitted) ("The funding of a criminal defendant's litigation expenses in an *ongoing* case before [Judge Folsom]... [is] precisely the sort of instance in which ancillary jurisdiction is warranted.")

In light of the cases cited in Teitler, 443 F.3d 202, 208-209 (2nd Cir. 2006) and other circuit court, the defendants must concede that "had the underlying federal case

[here] been a civil suit, [the] fee dispute" could have been resolved pursuant to a court's ancillary jurisdiction powers. The [courts] have long stated "that disputes arising out of a criminal matter; the fee dispute here was properly related to the main action, and in managing that proceeding, it was necessary for the court to resolve it." (emphasis supplied) Garcia v. Teitler, 443 F. 3d at 209.

The most common exercise of ancillary jurisdiction is, probably, to resolve fee disputes between a party and its attorney arising in litigation in which the attorney represented the party. Stein v. KPMG, 486 F.3d 753, 761 (2nd Cir. 2006) (citing Novinger v. E.I. Dupont deNemours & Co. Inc., 809 F. 2d 212 (3rd Cir. 1987).

The genesis of the present dispute has been defined in the background and history above, which is itself ancillary to the underlying criminal action. Such proceedings are necessary, as a district court must, on the one hand, ensure that a defendant's representation does not raise any conflict of interest, violations of the Sixth Amendment, legal malpractice, and on the other hand, protect a defendant's Sixth Amendment right to effective assistance of counsel, which included the right – albeit qualified – to counsel of one's own choosing. Garcia v. Teitler, at 209-210. (citing United States v. Jones, 381 F,3d 114, 119 (2nd Cir. 2004); United States v. Perez, 325 F.3d 115, 125 (2nd Cir. 2003); see also United States v. Gonzalez-Lopez, 395 F.3d 924, 928-29 (8th Cir. 2005) (discussing right to defendant to counsel of his own choosing balanced against the need of the court to administer justice).This [Court's]

administrative duties, including ancillary hearings if necessary, are similarly related to legal representation for indigent defendants who have a right to appointed counsel. Garcia v. Teitler, supra at 209 (citing United States v. Nivica, 887 F.2d 1110, 1121 (1st Cir. 1989 (citing Gideon v. Wainwright, 372 U.S. 335, 344, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963)); see also 18 U.S.C. 3006(a)(1)(H) (requiring district courts to set up a plan for the representation of indigent defendants and requiring, as part of that plan, representation of those entitled to counsel under the Sixth Amendment). Any or all of these concerns, which a court undoubtedly has the authority (and hence, jurisdiction) to address, necessarily implicate attorney's fees.

Unlike in Teitler, Mr. Prince has been unable to retain/obtain new counsel of his choosing, the record reflects that Mr. Prince has no means and that the funds paid to the three attorneys as defendants hereto, shall be needed to pay the new counsel's of Mr. Prince's choosing that are Ravkind & Associates, LLC. Id. at 209.  In order to guarantee a defendant's right to choose his own counsel where, as here, his criminal case is ongoing, and the [fact that defendant has become indigent], and requiring the appointment of counsel, the Honorable United States District Court Judge Folsom must be able to exercise ancillary jurisdiction to resolve a fee dispute.  See, Garcia v. Teitler, supra at 209 (citing Novinger v. E.I. Dupont de Nemours & Co., Inc., 809 F.2d 212, 217 (3rd Cir. 1987) (noting that while "attorneys' fee arrangement…are matters primarily of state contract law…the federal forum has a vital interest in those arrangements because

they bear directly upon the ability of the court to dispose of cases before it in a fair manner"); United States v. Weismann, 1997 U.S. Dist. LEXIS 8540 (internal citations omitted)). The Teitler opinion of the Second Circuit, goes on to fully discuss criminal matters fee disputes and ancillary jurisdiction and cites United States v. Bracewell, 569 F.2d 1194, 1197 (2nd Cir. 1978); United States v. Parker, 438 F. 3d 81, 2006 WL 389721, at *18 (2nd Cir. 2006) and the application of the 18 U.S.C. 3006(f). Garcia v. Teitler, supra at 210.

The Courts have explicitly defined "cause" as "misconduct". See, Casper v. Lew Lieberbaum & Co., 182 F. Supp. 2d 342. 346; Gurry v. Glaxo Wellcome, Inc., 2000 U.S. LEXIS 16455 as cited in Teitler, 2004 U.S. Dist LEXIS 13854.

Mr. Prince clearly and explicitly above in the history of this case, defined cause and misconduct. Teitler, id.

The fee dispute between Weismann and his attorneys in a criminal matter was "intimately intertwined with the comportment of the [criminal] case, because the dispute threatened to affect the timing of post-trial motions and sentencing. United States v. Weismann, 1997 U.S. Dist. LEXIS 8540. This is a factual issue in these proceeding, as Mr. Prince seeks to file post-trial motions and sentencing, with the assistance of Ravkind & Associates, LLC his attorneys of choice.

In assessing the legal fees on a quantum meruit basis, there are certain factors to be considered: (1) the difficulty of the matter; (2) the nature and extent of the

services rendered; (3) the time reasonably expended on those services; (4) the quality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue; and (7) the results obtained." Teitler, id (quoting Casper, 182 F. Supp. 2d at 346.)

The Second Circuit in affirming Teitler, held in favor of the lower court's award of the fees back to the defendants. The district court properly exercised jurisdiction over parties' attorney fees dispute since 28 U.S.C. sec 1367 did not limit court's power to exercise ancillary jurisdiction over matters related to ongoing criminal cases. The resolution of the fee dispute fell within district court's ancillary powers, as it related to court's ability to function successfully. Garcia v Teitler, 443 F. 3d 202; 2006 U.S. App. LEXIS 8181.

The Second Circuit as well as other circuit have ruled that 28 U.S.C.S sec . 1367(a) means exactly what it says; in civil cases, a court may exercise jurisdiction over all other claims that are so related to the claims over which the court has original jurisdiction. Judge Folsom's jurisdiction over criminal matters is defined by 18 U.S.C.S. sec 3231. Garcia v. Teitler, supra.

At the heart, ancillary jurisdiction is aimed at enabling Judge Folsom to administer justice within the scope of his jurisdiction. Ancillary jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety. Incident to the deposition of the principal issues before it, a court may decide collateral matters necessary to render complete justice. Garcia v. Teitler, supra

Ancillary jurisdiction may be exercised for two separate, though sometimes related, purposes:  (1) to permit disposition of claims that are, in varying respects and degrees, factually interdependent by a single court, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.  Garcia v. Teitler,  supra.

In order to guarantee Mr. Prince's right to choose his own counsel where his criminal case is ongoing and to avoid the possibility of Mr. Prince becoming indigent and requiring the appointment of counsel, Judge Folsom must be able to exercise ancillary jurisdiction to resolve a fee dispute.  Garcia v Teitler, supra.

The courts in the Fifth Circuit, United States Court of Appeals has ruled that "when the claim forms part of the same case or controversy because they "derive from a common nucleus of operative fact, "and, thus, supplemental jurisdiction exists.  George v. Borden Chems. & Plastics Operating Ltd. Pshp., 960 F. Supp. 92, 95 (1997 U.S. LEXIS 5011 (M.D. La. 1997).

The United States Supreme Court in upholding Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed 2d 27 (1991) (power to compel payment of opposing party's attorney fees…)  This was a Fifth Circuit case.

"[T]he doctrine of ancillary jurisdiction…recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." Kokkonen v. Guardian Life Insurance Company of

America, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed 2d 391 (1994). Upholding the

Supreme Court opinion in review of the Fifth Circuit Court of Appeals in Chambers v.

NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed 2d 27 (1991) (fee dispute). See,

Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Burni Negara,

500 F. 3d 111, 128 (2nd Cir. 2007).

The Second Circuit using the ancillary jurisdiction standard in Karaha Bodas,

supra at 126-129, upholding the Fifth Circuit opinion (emphasis supplied) in Karaha

Bodas, 364 F.3d 274 (5th Cir. 2004), in applying the fee dispute standard of Garcia v.

Teitler, in using ancillary jurisdiction, (see, e.g., Karaha Bodas, 500 F.3d 129, upholding

the Fifth Circuit in Karaha Bodas, 364 F. 3d 274 (5th Cir. 2004); as well as in Chambers

v. NASCO, Inc., supra., it is [well] settled that the Fifth Circuit will use its ancillary

jurisdiction authority to settle fee disputes that are incidental to other matters properly

before the court. Kokkonen, 515 U.S. at 378 (citing Chambers (which is a Fifth Circuit

lower court opinion).

As late as 2007 in Karaha Bodas , 500 F. 3d at 129, in applying Garcia v. Teitler,

443 F. 3d 202, 208 (2nd Cir. 2006) and Kokkonen, 511 U.S. 375;  Karaha, 500 F. 3d at

128 and  Chambers, (stemming from a fee dispute matter at the Fifth Circuit) …it is

undisputed that the Fifth Circuit has used ancillary jurisdiction to settle fee disputes and

those decisions have been upheld in two Supreme Court decisions in Kokkonen and

Chambers, which Kokkonen uses Chambers to make its decision.

The multiple circuits courts (all have been identified in this complaint now before Judge Folsom) have ruled that fee disputes that arose out of a criminal and civil proceeding before the Court, that "intimately intertwined with the comportment of the [criminal] case" is  a matter ancillary jurisdiction is most common, to resolve fee disputes.

Magistrate Judge Mazzant's oral ruling that the Fifth Circuit does not get involved in fee disputes is misapplied.  Further, the magistrate judge's application of – the Eastern District and/or the Fifth Circuit does not use other circuits authority is also misapplied.  As argued above, the Supreme Court has upheld Fifth Circuit fee dispute matters in Chambers; and the Second Circuit in using Teitler in the Karaha Bodas, 500 F. 3d at 129, upheld a Fifth Circuit opinion in Karaha Bodas, 364 F. 3d 274 (5th Cir. 2004).

Ultimately, Mr. Prince a criminal defendant has a constitutional right to the right to have counsel of his choice, and effective assistance of counsel on his first appeal as of right.  Evitts v. Lucey, 469 U.S. 387, 397, 105 S. Ct. 830, 83 L.Ed. 2d 821 (1985); United States v. Dovalina, 262 F. 3d 472, 474 (5th Cir. 2001); Clark v. Johnson, 227 F. 3d 273 (5th Cir. 2000); United States v. Williamson, 183 F. 3d 458 (5th Cir. 1999).  The Fifth Circuit has even stated that indigent defendant's must be provided with free trial transcripts.  Carmell v. Quarterman, 292 Fed. Appx. 317 (5th Cit. 2008) (citing Evitts v. Lucey, 469 U.S. at 396).

Mr. Prince through the history as stated, and the argument and authority hereto, request of the Court to enter an Order to return the fees currently held under fraud by the attorneys, and allow him to retain the attorneys of his choice to represent him in the *ongoing* criminal case – sentencing and appeal.   <u>Sixth Amendment to the United States Constitution.</u>   (emphasis supplied)

## PRAYERS

WHEREFORE, Mr. Prince request of the Honorable Judge David Folsom to not accept the magistrate judge's oral opinion of March 31, 2010.  Mr. Prince request of the Court to set this matter for an immediate evidentiary hearing, and require the three attorneys named in this complaint to bring all "contracts, payments, receipts for payments" with them for the evidentiary hearing.

Further, Mr. Prince request that an Order be issued that the three attorneys shall repay to Mr. Prince the requested attorneys fees, plus interest,  to allow for the hiring of Ravkind & Associates, LLC, Attorneys at Law, 5005 Greenville Ave., Suite 200, Dallas, Texas 75206  the attorneys of his choice to represent him at sentencing and on his first direct appeal.

Mr. Prince request of the Court to invoke any further relief that the Court deem just and equitable.

25

Respectfully submitted,

CLOVIS PRINCE, Pro se
Reg No.  09329-064
Fannin County Jail
2389 Silo Road
Bonham, Texas 75418

## CERTIFICATE OF SERVICE

This is to certify that a true and correct original of this complaint was mailed to the Honorable David Folsom on this the _15th_ day of April, 2010 by certified mail return receipt requested and a copy sent to the following:

Honorable David Folsom
Chief United States District Judge
Eastern District of Texas
500 North State Line Avenue, Third Floor
Texarkana, Texas 75504

William M. Ravkind
John H. Carney
Ravkind & Associates, LLC
Attorneys at Law
5005 Greenville Ave., Suite 200
Dallas, Texas 75206
214/559-0555
214/363-9979-telecopier

CLOVIS PRINCE